IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

GERALD L. BRUMLEY                                    PLAINTIFF

V.                       NO. 04-6134

CITY OF ROCKPORT, CHIEF
DAVID THOMASON, AND OFFICER
BRANDON THOMASON                                    DEFENDANTS

MEMORANDUM OPINION AND ORDER

Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983 against Separate Defendants City of Rockport ("Rockport"), Chief David Thomason ("Chief Thomason") and Officer Brandon Thomason ("Brandon") alleging an illegal search and seizure and an unlawful arrest and detention. Currently before the Court is Defendants' motion for summary judgment. (Doc. 30).

## I. Background

This case arises out of events surrounding the stop and detention of Plaintiff on the afternoon of October 11, 2002, in the parking lot of the Rockport Municipal Building. Plaintiff alleges he went to the building to deliver three envelopes containing Freedom of Information Act requests.[1] Plaintiff states he placed the three envelopes on Darlene Reeves Shockey's ("Mrs. Shockey") desk, took a photograph of the envelopes on the desk with a Polaroid camera, and left the building. (Doc. 43-6 ¶ 4). Plaintiff alleges Mrs. Shockey asked, "What's this?" to which he responded, "Here's some mail for you." After he took the

---

[1] The requests concerned information granted to Plaintiff through a discovery motion in a case in which he was the defendant charged with a traffic citation issued to him by Chief Thomason. The case was dismissed before discovery was completed, so Plaintiff sought the information through the Freedom of Information Act. The requests were returned by the U.S. Postal Service as "not deliverable as addressed." Plaintiff then delivered them in person. (Doc. 43-6 ¶¶ 1-2).

photograph, Mrs. Shockey asked, "What's that for?"  Plaintiff responded with, "My record."  (Doc. 45-7; Brumley Dep. at 11).

Chief Thomason and Brandon were parked approximately 750 feet from the building.  Chief Thomason received a call from Mrs. Shockey on his cell phone telling him that someone threw items at her, took pictures, and left.  Mrs. Shockey was crying and upset.  She gave Chief Thomason a description of the vehicle the suspect was driving.

Plaintiff alleges he traveled approximately three or four car lengths in the parking lot when two police cars, driven at a high rate of speed by Chief Thomason and Brandon, arrived with blue lights flashing.  Defendants contend that Plaintiff stopped his vehicle when they entered the driveway and that neither police car activated its blue lights.  Plaintiff's testimony reflects that because the police cars were traveling at a high rate of speed with their lights on, he had the impression that they wanted him to stop and he did.  (Doc. 45-7; Brumley Dep. at 14).  Plaintiff alleges Chief Thomason blocked him from moving forward and Brandon parked behind him crosswise of the driveway.  (Doc. 1 ¶ 8).  All parties exited their vehicles.  Plaintiff alleges Chief Thomason and Brandon began a verbal tirade against him.  They called him a "damned crazy," "crazy nut," "crazy bastard," and a "damned nut".  Chief Thomason asked Plaintiff to "find something else to do other than acting crazy."  (Doc. 1 ¶ 9).  Brandon repeatedly asked Plaintiff, "Why don't you get a job, instead of running around being a crazy?"  (Doc. 1 ¶ 9).  Plaintiff alleges Chief Thomason seized his camera. Defendants contend Plaintiff voluntarily handed Chief Thomason the camera, along with a Polaroid photograph that

Plaintiff admits he took for the purpose of giving to the Defendants. Both parties agree the camera was returned to the Plaintiff before he left. Chief Thomason talked with Mrs. Shockey a second time and learned that the man in the parking lot was the one who created the disturbance. She also told Chief Thomason that she wanted to "press charges" against the Plaintiff. Chief Thomason cited Plaintiff with obstructing governmental operations and harassment. The charges were subsequently dismissed. Plaintiff alleges the stop and detention lasted "well over 25 minutes" (Doc. 43-6 at 18). Defendants contend the stop lasted seven or eight minutes. (Doc. 11; Brandon Thomason Dep. at 14).

In their motion for summary judgment, Defendants ask the Court to grant summary judgment as to all parties. In addition, they contend they are entitled to qualified immunity.

## II. Discussion

In determining whether summary judgment is appropriate, the Court must view the facts and inferences in the light most favorable to the non-moving party. *See Rabushka v. Crane Co.,* 122 F.3d 559, 562 (8th Cir. 1997). The moving party bears the burden of establishing the absence of issues of material fact in the record and of establishing that it is entitled to judgement as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 316 (1986). Once the moving party has met this burden, the non-moving party may no longer rest on the allegations in its pleadings, but must set forth specific facts by affidavit and other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e). In this case then, Plaintiff "must do more than simply show that there is some metaphysical

doubt as to the material facts, "*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986), rather, he must convince the court that there is sufficient evidence to support a jury verdict in his favor. *See Nat'l. Bank of Commerce of El Dorado, Arkansas v. Dow Chem. Co.,* 165 F.3d 607 (8th Cir. 1999). If a plaintiff fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, then the defendant is entitled to judgment as a matter of law and all other facts are rendered immaterial. *See Thelma D. By Delores A. v. Bd. of Educ.,* 934 F.2d 929, 932 (8th Cir. 1991).

In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). A court required to rule upon the qualified immunity issue must consider the threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? *See id*. at 201. The next sequential step is to ask whether the right was clearly established. *See id*. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. See *id*. at 202.

Plaintiff alleges an illegal search and seizure and unlawful arrest and detention. Our Constitution provides that 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

violated.' *U.S. Const. Amend. IV.* The United States Supreme Court has always recognized that, 'No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.' *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1967). In *Terry,* the Supreme Court stated that a police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant an intrusion upon the constitutionally protected interests of the private citizen. *See id.* at 21. It is an objective standard: would the facts 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? *See id.* Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances. *United States v. Garcia*, 23 F.3d 1331, 1334 (8th Cir. 1994).

Chief Thomason alleged Mrs. Shockey called him on his cell phone, told him someone threw items at her, took pictures, and left. Mrs. Shockey described the suspect's vehicle. When the Defendants pulled into the parking lot moments later, they observed a vehicle that matched the description given to Chief Thomason by Mrs. Shockey. They stopped the vehicle. Mrs. Shockey told Chief Thomason during a second phone call that the person in the parking lot was the person who created the disturbance. A reasonable officer in Chief Thomason's position could have believed that stopping the Plaintiff was an appropriate police action. It could

not be clear to him that his conduct was unlawful in this situation.

Plaintiff's unlawful arrest and detention claim depends upon 25 minutes or so time he was detained and then subjected, he contends, to verbal abuse. There is no rigid time limit on an investigatory detention. *See United States v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). In determining whether a period of time is excessive, we must consider the "law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes." *Id.* Rule 3.1 of the Arkansas Rules of Criminal Procedure states:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of no more than fifteen (15) minutes or for such a time is reasonable under the circumstances.

Chief Thomason stopped the Plaintiff after receiving a phone call from Mrs. Shockey advising him someone threw items at her and took photographs. He talked with both Mrs. Shockey and the Plaintiff to ascertain what occurred. He wrote Plaintiff a citation for obstructing governmental operations and harassment.[2]

---

[2]Plaintiff was given a citation for obstructing governmental operations and harassment, which under Ark. R. Crim. Pro. 5.2 an officer is authorized to do. Commentary to that rule recognizes that it is a "solution to the problem facing an officer who must deal with the petty misdemeanant and his victim." An officer may arrest an individual if the officer has reasonable cause to believe that such person has committed any violation of law in the officer's presence. See Ark. R. Crim. Pro. 4.1. In this situation, Chief Thomason had an upset victim who wanted to "press charges." Neither Chief Thomason nor

We do not find his detention for the 25 minutes to be an unreasonable amount of time under the circumstances. Accordingly, we find Defendant Chief David Thomason and Defendant Officer Brandon Thomason are entitled to qualified immunity.

Plaintiff alleges Chief Thomason and Brandon called him a "crazy nut," "damned crazy," "crazy bastard," and "damned nut" as part of a verbal tirade they executed against him. Name-calling is not a constitutional violation. *Martin v. Sargent,* 780 F.2d 1334, 1338 (8th Cir. 1985). Moreover, the Eighth Circuit has held that a threat constitutes an actionable constitutional violation only when the threat is so brutal or wantonly cruel as to shock the conscience or if the threat exerts coercive pressure on the plaintiff and the plaintiff suffers the deprivation of a constitutional right. *See King v. Olmsted County,* 117 F.3d 1065, 1067 (8th Cir. 1997). Chief Thomason's statements that the Plaintiff "find something else to do other than acting crazy," and Brandon's question of "why don't you get a job, instead of running around being a crazy?" do not rise to the level of a constitutional violation as they are not sufficient to "shock the conscience." They are, at best, verbal harassment.

Plaintiff alleges Chief Thomason seized his camera. A seizure under the Fourth Amendment occurs when there is "some meaningful interference with an individual's possessory interest in that property." *Coonts v. Potts*, 316 F.3d 745, 750 (8th Cir. 2003).

---

Brandon observed any criminal behavior from Plaintiff from which they could make an arrest. (Chief Thomason Dep. at 24; Brandon Thomason Dep. at 19-20.) Chief Thomason was authorized under the rule and the circumstances to issue a citation to the Plaintiff because, based on the situation, there was reasonable cause for him to believe the Plaintiff committed a misdemeanor.

Chief Thomason was told and Plaintiff admits that Plaintiff took at least one photograph of Mrs. Shockey. Chief Thomason's examination of Plaintiff's camera was part of his investigation. Plaintiff's camera was returned during his detention. We do not find that the examination of the camera by Chief Thomason was a seizure under the meaning of the Fourth Amendment.

Rockport cannot be held liable under 42 U.S.C. § 1983. In determining whether a municipality is subject to liability under 42 U.S.C. § 1983, courts analyze whether a "municipal custom or policy" caused, or led to, a deprivation of the plaintiff's constitutional rights. *See Avalos v. City of Glenwood,* 382 F.3d 792, 802 (2004). The Plaintiff's complaint does not allege any constitutional injury was the result of an official policy or widespread custom. Rockport is mentioned but only to show that it is located in Hot Spring[s] County and that Chief Thomason and Brandon work as police officers in Rockport. (Doc. 1 ¶¶ 2-4). Nevertheless, Plaintiff attempts in his statement of material facts in dispute (Doc. 46) to attribute the actions of Chief Thomason to Rockport by asserting that Chief Thomason is a decision maker and policymaker and establishes customs for police operations for Rockport (Doc. 46 ¶¶ 1-2). In a motion for summary judgment, Fed. R. Civ. P. 56( c) provides the court may consider "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any." Chief Thomason denied developing any policies or personal policies (Doc. 43-3; Chief Thomason Dep. at 24). Plaintiff has not set forth any other specific facts by affidavit and other evidence showing that Chief Thomason is a decision maker, policymaker or establishes customs

for police operations in Rockport as required by Rule 56( c).[3]

While the situation could, no doubt, have been handled more appropriately by the Defendants, the causes of action against them must be dismissed.

Based on the foregoing, Defendants' motion for summary judgement is GRANTED and the Plaintiff's complaint is DISMISSED WITH PREJUDICE. All parties are to bear their own costs and fees. The jury trial scheduled for the week of January 23, 2006, is cancelled.

IT IS SO ORDERED this 3rd day of November, 2005.

                                      /s/ Robert T. Dawson
                                      Robert T. Dawson
                                      United States District Judge

---

[3] Plaintiff's statement of material facts in dispute also alleges the City of Malvern, Arkansas, failed to provide proper training of Rockport police officers. We note that the City of Malvern is not a party to this action.